WILLIAMS, APPELLANT, *v.*
HOBBS ET AL., APPELLEES.
WILLIAMS, APPELLEE, *v.*
HOBBS ET AL., APPELLANTS;
DOCTORS HOSPITAL, APPELLEE.

(Nos. 82AP-553 and -571—Decided April 12, 1983.)

*Messrs. Lane, Alton & Horst, Mr. Jack R. Alton* and *Mr. Richard O. Wuerth,* for Dale L. Williams, D.O.

*Robins, Preston & Beckett Co., L.P.A.,* and ·*Mr. John A. Sentz, Jr.,* for T.C. Hobbs & Assoc., Inc.

*Messrs. Baker & Hostetler, Mr. Charles J. Chastang* and *Mr. Stephen J. Vergamini,* for Doctors Hospital.

COOK, J. Dr. Dale L. Williams, an osteopathic physician specializing in radiology, practiced at Doctors Hospital in Columbus for approximately fifteen years. During that period of time, he was an associate physician and later a member physician of a group radiology practice known as T.C. Hobbs and Associates, Inc. When he was employed by the Hobbs group, Dr. Williams signed an employment contract which contained the following covenant not to compete:

"Employee further agrees that during the term of this Agreement, or within a period of two years following the effective date of the termination of his employment, he will not engage directly or indirectly in the specialty practice of radiology, or any of its branches, in the City of Columbus, or the County of Franklin, unless this provision is waived in writing by the corporation."

As the result of a dispute between Dr. Williams and other physicians in the group, Dr. Williams was expelled from the corporation effective December 3, 1981. The corporation also demanded that Doctors Hospital terminate Dr. Williams' privileges at the hospital as to the use of the hospital's radiology equipment and facilities because the corporation and Dr.

Hobbs, by contract, had the exclusive right to perform all radiology services at the hospital. The administrator of the hospital notified Dr. Williams that his privileges to utilize hospital radiology facilities would terminate at midnight, December 3, 1981.

On December 30, 1981, the executive committee of the board of trustees of the hospital ratified the administrator's action by renewing Dr. Williams' appointment to the hospital's medical staff, but terminated his radiology privileges. Dr. Williams appealed to the full board of trustees which affirmed the action of its executive committee.

On December 3, 1981, Dr. Williams filed a legal action against Doctors Hospital, Dr. T.C. Hobbs, and T.C. Hobbs and Associates, Inc., seeking money damages and an injunction enjoining defendants from preventing his continued practice of radiology at the hospital. Each of the defendants filed an answer. T.C. Hobbs and Associates, Inc. filed a counterclaim seeking an injunction to prevent Dr. Williams from practicing radiology in Franklin County for two years, pursuant to the covenant not to compete which was included in his employment contract.

The trial court heard the two requests for injunctive relief on the merits, denied both requests, and, as to the judgment denying Dr. Williams' request for injunctive relief, found there was "no just cause for delay."

T.C. Hobbs and Associates, Inc., appealed the trial court's denial of its requested injunction and this appeal was assigned No. 82AP-571. It filed the following assignment of error:

"The court erred in denying the request of T. C. Hobbs & Associates, Inc. for a temporary and permanent injunction enjoining the plaintiff from practicing radiology, declaring that the noncompetitive covenant in the contract of employment was invalid and in restraint of trade."

Dr. Williams appealed the judgment

of the trial court denying his request for injunctive relief and this appeal was assigned No. 82AP-553. He filed the following three assignments of error:

"1. The Court of Common Pleas committed error in its decision of April 23, 1982 by finding that the appellee Doctors Hospital did not breach or violate its Code of Regulations by terminating the appellant's clinical radiology privileges.

"2. The Court of Common Pleas committed error in overruling the appellant's motion for a temporary and permanent injunction enjoining the appellee Doctors Hospital from preventing the appellant's continued use of hospital radiology equipment, facilities and personnel.

"3. Whether this Court pursuant to Ohio Revised Code Section 2727.05 should grant an injunction in favor of the appellant enjoining the appellee Doctors Hospital from preventing the appellant's continued use of hospital radiology equipment, facilities and personnel."

The appeals were consolidated for argument in this court.

All errors assigned in both appeals are without merit.

Turning first to appeal No. 82AP-571, the law as to covenants restricting competition by an employee with his former employers is set forth in *Raimonde* v. *Van Vlerah* (1975), 42 Ohio St. 2d 21 [71 O.O.2d 12], where the Supreme Court, in paragraph two of the syllabus, held:

"A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public."

In the instant cause, the trial court found:

"The covenant is unreasonable for it is greater than is required for the protection of defendant Hobbs. The covenant imposes an undue hardship on the plaintiff, and also, it is injurious to the public. Plaintiff's services are vital to the health, care and treatment of the public. The demand for his medical expertise is critical to the people in our community. This Court is not attempting to rewrite the contract, but rather to prevent undue hardship to the plaintiff and the public. Defendants' rights are also considered in this Court's findings."

The trial court's finding was supported by the evidence. The transcript of proceedings indicates that there was evidence before the court that Dr. Williams is a skilled radiologist, particularly in his subspecialty of interventional radiology. The evidence also indicates that his particular skill is not common among radiologists in the community. There is also evidence that the covenant in the employment contract constitutes a hardship to Dr. Williams and the public since Doctors Hospital is one of the few osteopathic institutions in which he can practice his specialty. The evidence also indicates that T.C. Hobbs and Associates, Inc.'s radiology practice is primarily performed at Doctors Hospital.

There was evidence from which the trial court could conclude that the covenant that Dr. Williams was not to practice in Franklin County for two years upon leaving T.C. Hobbs and Associates, Inc. was unreasonable.

In *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261], the Ohio Supreme Court held:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

We conclude that the trial court did not err in denying T.C. Hobbs and Associates, Inc.'s request for an injunction.

We turn now to appeal No. 82AP-553. The sole issue presented by this ap-

peal is whether Doctors Hospital breached its Code of Regulations by terminating Dr. Williams' clinical radiology privileges.

Dr. Williams argues that Doctors Hospital breached Sections F and G of Article III of the Bylaws, Rules and Regulations of the Medical Staff, Departments and Sections of Doctors Hospital, which were approved and made a part of the Code of Regulations of Doctors Hospital by Article IX of said code by the board of trustees.

Section F of Article III provides:

"F.   CLINICAL AND OTHER HOSPITAL PRIVILEGES

"1.   Every member of the Medical Staff, every member of the Affiliate Staff, and every other person, physician or dentist practicing at this Hospital by virtue of any membership or otherwise, shall exercise only those clinical and other Hospital privileges specifically granted to him by the Board of Trustees.

"2.   Each applicant for initial appointment to the Medical Staff or Affiliate Staff shall request clinical and other Hospital privileges. Members of the Medical Staff or Affiliate Staff may, from time to time, request additional such privileges. Clinical and other Hospital privileges granted to any member shall be commensurate with the qualification requirements of each such member as set forth in these bylaws.

"3.   Clinical and other Hospital privileges of each member of the Medical Staff and Affiliate Staff shall be periodically reviewed in accordance with the annual evaluation and reappointment process as provided herein. Any increase or curtailment of such privileges shall be based upon the then existing qualifications of any such member.

"4.   Members of the Medical Staff shall be entitled, unless otherwise limited in accordance with these bylaws or the Rules and Regulations of the Hospital, to the following privileges: to admit and treat patients in the Hospital; to use In-patient and Outpatient facilities; to hold Staff office, Departmental and Committee Chairmanships; and to vote at Medical Staff and Departmental meetings."

Section G of Article III provides in part:

"4.   REAPPOINTMENT PROCESS

"a.   There shall be an annual evaluation of the continuing eligibility qualifications of all members of the Medical and Dental Staff and Affiliate Staff. Each member of the Medical Staff and each member of the Affiliate Staff shall complete and submit to the Credentials Committee an application for reappointment on an approved form with a current delineation of privileges record.

"b.   The Credentials Committee shall review all applications for reappointment, current delineation of privileges and any other pertinent information as to the continuing eligibility and qualifications of members of the Medical Staff and Affiliate Staff, and unless it finds grounds for corrective action as provided hereinafter, recommendation for reappointment shall be made to the Executive Committee of the Staff and the Board of Trustees.

"c.   If the Credentials Committee finds grounds for corrective action against any member, then it shall report such grounds to the Executive Committee of the Staff for review.

"d.   If there has been a request that the clinical or other Hospital privileges of any member of the Medical Staff or Affiliate Staff be increased or decreased, the Credentials Committee shall determine whether such requested privileges are commensurate with the current qualifications of such member, and shall make a recommendation to the Executive Committee of the Staff. Thereafter, the process set forth in these Bylaws regarding initial appointments shall be followed."

Dr. Williams argues that his radiology privileges for 1982 were recommended for renewal and extension by the credentials committee of the medical staff and

the executive committee of the medical staff. Therefore, he argues that the board of trustees of Doctors Hospital could not terminate his clinical privileges at the hospital because of its contract with T.C. Hobbs and Associates, Inc., whereby the Hobbs group had an exclusive contract to operate the radiology department in the hospital, without violating the above-quoted Sections F and G of Article III.

In *Khan* v. *Suburban Community Hospital* (1976), 45 Ohio St. 2d 39, [74 O.O.2d 56], the Ohio Supreme Court held:

"Where the board of trustees of a private, nonprofit hospital adopts reasonable, non-discriminatory criteria for the privilege of practicing major general surgery in the hospital, and procedural due process is followed in adopting and applying such criteria, and a staff physician is unable to qualify thereunder, a court should not substitute its evaluation and judgment of such matters for those of the board of trustees and order the granting of such specialty privileges to the physician."

The control and management of Doctors Hospital, a corporation, is assigned by Article III of the Code of Regulations of the hospital to the board of trustees. Section 2 of Article III provides:

"The Board of Trustees shall have the control and management including the power to sell, lease, mortgage, dispose and otherwise encumber the business funds and property of the corporation. It may adopt bylaws not inconsistent with these regulations, promulgate and enforce rules covering the use of the property and privileges of the corporation by its shareholders, fill vacancies in its own membership, appoint standing or special committees, and for good cause change their personnel. It shall have the responsibility for providing an appropriately equipped and staffed physical plant, maintained in accordance with Ohio law and local regulations."

Pursuant to its control and management of the hospital, the board of trustees entered into an exclusive written contract with T.C. Hobbs and Associates, Inc., in 1962, and updated September 1, 1981, whereby the Hobbs group had the exclusive right to operate the radiology department in the hospital. Paragraph 5 of the agreement provides:

"Hospital agrees that Hobbs [Dr. T. C. Hobbs, individually] and Associates [the corporation], as independent contractors of Hospital, shall be solely and exclusively responsible for providing any and all radiological, nuclear medicine services, and other imaging and interventional procedures not previously assigned to other specialists, within the Hospital and any other ancillary facilities during the term of this Agreement."

Exclusive contracts have been generally upheld as a reasonable exercise of a hospital's board of trustees' power to provide for the proper management of the hospital. *Dattilo* v. *Tucson General Hospital* (1975), 23 Ariz. App. 392, 533 P. 2d 700; *Centeno* v. *Roseville Community Hospital* (1979), 107 Cal. App. 3d 62, 167 Cal. Rptr. 183; *Benell* v. *Virginia* (1960), 258 Minn. 559, 104 N.W. 2d 633; *Blank* v. *Palo Alto-Stanford Hospital Center* (1965), 234 Cal. App. 2d 377, 44 Cal. Rptr. 572; *Adler* v. *Montefiore Hospital Assn. of W. Pa.* (1973), 453 Pa. 60, 311 A. 2d 634.

In the instant cause, prior to the board of trustees' denying Dr. Williams' clinical privileges in the radiology department, Dr. Williams was an employee of the Hobbs group which, pursuant to its exclusive contract with the hospital, was to provide all its radiology services. When he was expelled from the Hobbs group, he lost his radiology clinical privileges. He was no longer qualified to exercise said clinical privileges because only members of the Hobbs group were qualified to exercise said privileges as a result of the exclusive contract.

We conclude that Doctors Hospital did not violate its Code of Regulations when it terminated the radiology clinical privileges of Dr. Williams because of the

hospital's exclusive contract with Dr. T.C. Hobbs and T.C. Hobbs and Associates, Inc.

The judgments in both appeals are affirmed.

*Judgments affirmed.*

REILLY, J., concurs.

MOYER, J., concurs in part and dissents in part.

COOK, J., of the Eleventh Appellate District, sitting by assignment in the Tenth Appellate District.

MOYER, J., concurring in part and dissenting in part. While I agree with the majority's disposition of the appeal of plaintiff, Dale L. Williams, D.O., I respectfully dissent from the majority's disposition of the appeal of defendant T.C. Hobbs and Associates, Inc.

T.C. Hobbs and Associates, Inc., sought a temporary and permanent injunction pursuant to a noncompetitive covenant in its contract of employment with Dr. Williams. My review of the record indicates that the trial court's denial of the injunction is not supported by the evidence. As the majority states, the test to determine whether a covenant in a contract that restricts competition of an employee after he or she leaves an association with his employer is set forth in *Raimonde* v. *Van Vlerah* (1975), 42 Ohio St. 2d 21 [71 O.O.2d 12]. In its decision, the trial court applied the *Raimonde* test and found that the covenant executed by T.C. Hobbs and Associates, Inc., and Dr. Williams: (1) "imposes an undue hardship on the plaintiff" and (2) "is injurious to the public." The trial court further observed that "[p]laintiff's services are vital to the health, care and treatment of the public" and that the "demand for his medical expertise is critical to the people" in this community.

The trial court made no finding with respect to the hardship the covenant not to compete would cause plaintiff. To review that test first, I find nothing in the record that indicates that plaintiff's agreement not to practice radiology in Franklin County for a period of two years after his termination of employment with T.C. Hobbs and Associates, Inc., caused him undue hardship. To be sure, any person who is prevented from practicing his profession or trade for a period of time in an area in which it has been practiced, suffers some hardship. However, the *Raimonde* test requires more than just some hardship. Plaintiff did not show that he could not readily obtain a position or establish a practice elsewhere. In fact, it could be assumed that, because his specialty appeared to be interventional radiology, there would be a demand for his services in many communities outside Franklin County. Too often courts have attempted to rewrite contracts for parties that appear after the fact to be more equitable to one or more of the parties. The *Raimonde* opinion acknowledges that temptation and its test should therefore be strictly applied.

With respect to the other branches of the *Raimonde* test, I find nothing in the record that supports the trial court's conclusion that enforcement of the covenant not to compete would be injurious to the public. The evidence indicates that T.C. Hobbs and Associates, Inc. had at least one and perhaps two other associates who could perform the same services as those being performed by Dr. Williams. There was no evidence offered indicating that, if Dr. Williams was not permitted to practice his profession in Franklin County, anyone would suffer as a result therefrom. There was no evidence indicating a shortage of radiologists in Franklin County.

The Supreme Court, in *Raimonde*, further stated that a covenant not to compete could be enforced to the extent necessary to protect an employer's legitimate interest. Plaintiff became

associated with T. C. Hobbs and Associates, Inc., immediately after completing his residency in radiology in 1967. He received considerable training and education during his association with T. C. Hobbs and Associates, Inc. The desirability of an arrangement by which a unified group of doctors operates the radiology department in a hospital was recognized by plaintiff himself while he was associated with T. C. Hobbs and Associates, Inc. If plaintiff were to be permitted to compete within Franklin County in violation of his contract, he presumably could attempt to compete with his former employers at Doctors Hospital if their exclusive contract were to be terminated for some reason.

Because I do not find in the record sufficient evidence to support the trial court's application of the *Raimonde* test to the facts in this case, I would sustain the assignment of error of T. C. Hobbs and Associates, Inc., in case No. 82AP-571, and reverse the judgment of the trial court and remand the cause with instructions to enter judgment for T. C. Hobbs and Associates, Inc.