384 S.E.2d 842

**Alan GANT, D.O.**

v.

**HYGEIA FACILITIES FOUNDATION, INC.**

No. 18228.

Supreme Court of Appeals of West Virginia.

July 12, 1989.

Dissenting Opinion Aug. 2, 1989.

Charles R. Garten, Charleston, for Gant.

Hamilton, Mooney, Burgess, Young & Tissue, Ralph C. Young, Oak Hill, for Hygeia Facilities Foundation.

NEELY, Justice:

Alan Gant, D.O. was employed by Hygeia Facilities Foundation, Inc. as a family practitioner at the Raleigh–Boone Medical Center in Whitesville, West Virginia from 1 June 1982 through 31 July 1987. After Dr. Gant resigned, he sought a declaratory judgment to void a restrictive covenant in his employment contract prohibiting him for a period of three years from practicing within thirty air miles of Whitesville. Because we agree with the circuit court that the restrictive covenant is reasonable and enforceable, we affirm the judgment of the Circuit Court of Boone County.

After completing his medical education and residency, Dr. Gant sought and secured employment with the Foundation as a family practitioner at their Raleigh–Boone Medical Center located in Whites-

ville. The Foundation is a nonprofit corporation chartered in 1955 for the purpose of providing good medical services to underserved, rural areas in southern West Virginia. In addition to the Whitesville clinic, the Foundation maintains seven other facilities. The primary care center in Whitesville is staffed by three physicians (one of whom was Dr. Gant) and offers physician services, ancillary services such as pharmacy, x-ray and laboratory, specialty services and community living services. During the first nine months of 1987, the Raleigh–Boone Medical Center had 13,460 patient visits of which 9,499 were doctor visits. Most of the approximately 12,000 active patients of the Center live in adjacent areas and forty-five percent of them live within a 13 mile area along West Virginia Route 3 between Whitesville and Seth.

When Dr. Gant began his employment he entered into a contract with the Foundation that contained a restrictive covenant. In his second employment contract dated 7 June 1984 the restrictive covenant was modified at Dr. Gant's request to read:

> In the event of the termination of my employment with the Foundation, I will not practice medicine within a 30 air mile radius of any medical facility owned and operated by the Foundation, in which I have worked, for a period of three (3) years subsequent to termination of my employment with said Foundation, except with the written permission of said Foundation. (Underlining indicates addition requested by Dr. Gant.)

After Dr. Gant resigned his employment with the Foundation for personal medical reasons, he opened a private family practice on 1 September 1987 at Seth.

On 18 September 1987 Dr. Gant sought a declaratory judgment to void the restrictive covenant in his employment contract. The Foundation counterclaimed seeking an injunction to enforce the covenant. The circuit court conducted a full hearing on the matter and determined the restrictive covenant was not unreasonable and granted the Foundation an injunction prohibiting Dr. Gant from practicing medicine within a thirty air mile radius of the Foundation's clinic in Whitesville.

I

In *Reddy v. Community Health Foundation of Man,* 171 W.Va. 368, 298 S.Ed.2d 906 (1982), we discussed a contract with a similar restrictive covenant between a physician and another nonprofit corporation also chartered for the purpose of providing good medical services in a rural area.[1] The restrictive covenant in *Reddy, Id.* 171 W.Va. at 371, 298 S.E.2d at 909, prohibited Dr. Reddy from "practicing medicine within a radius of thirty (30) air miles of Man, West Virginia, for period of three (3) years...." In *Reddy* we determined that restrictive covenants are subject to a rule of reasonableness. *Id.* 171 W.Va. at 373, 298 S.E.2d at 911. After we acknowledged that the rule of reasonableness is foggy, we examined social and economic considerations that would transform the rule "into a rule of best result." *Id.* 171 W.Va. at 374, 298 S.E.2d at 911–12. To determine if a restrictive covenant is reasonable, we used a three part inquiry: "A restraint is reasonable only if it (1) is no greater than is required for the protection of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *Id.* 171 W.Va. at 374, 298 S.E.2d at 911.

The Foundation, similar to the employer in *Reddy,* is a nonprofit organization that services its communities by assuring that quality health care is available in the local area. The Foundation brings doctors into its areas by providing various administrative and financial incentives and relies on these doctors to continue to help the Foundation serve the local area. The restrictive covenant is designed to protect the good-

1. *Reddy, Id.* 171 W.Va. at 371–72, 298 S.E.2d at 909, contained four "perplexing factual problems"; none of which exists in the present case

because Dr. Gant: (1) had no patients or practice independent of the Foundation; (2) was

will of the patients who have been served by the Foundation.[2]

> Otherwise doctors would come to town, work for the clinic until they built a substantial practice, and then operate a private office, taking business away from the clinic. The Foundation argues that if doctors are permitted to "rob" the clinic of its patients, the Foundation will lose needed revenue and, since it relies on clinic charges to stay solvent, the clinic will no longer be able to assure quality health care for the people of [its service area].

*Reddy, supra,* 171 W.Va. at 381, 298 S.E.2d at 918. In *Reddy* we noted that "the heart of all enforceable covenant not to compete is the principle of avoiding unjust enrichment." *Id.* 171 W.Va. at 381, 298 S.E.2d at 919. "The covenant is thus a response to the unjust enrichment of doctors that would be the result of the Foundation's labors if the clinic were left unprotected." *Id.*[3]

▉ In the present case the restrictive covenant is reasonable on its face; it was included in the contract for a valid business purpose and was not designed to intimidate Dr. Gant.[4]

## II

▉ Once a restrictive covenant has been shown to be reasonable on its face, the burden remains on the employer to show his interests require protection. *See* Syllabus Point 5, *Reddy, supra.* In Syllabus Point 3, *Reddy, supra,* we stated:

> An inherently reasonable restrictive covenant is presumptively enforceable in its entirety upon a showing by the employer that he has interests requiring protection from the employee.

Dr. Gant opened his solo practice in Seth, located thirteen miles north of Whitesville along West Virginia Route 3. The Foundation presented evidence showing the primary service area where ninety percent of the active patients for the Whitesville clinic live included, not only Seth, but as far north and west as Racine and Peyton. The Foundation also noted that the forty-five percent of active patients of the Whitesville clinic live in the area along West Virginia Route 3 between Whitesville and Seth.[5] Although Dr. Gant maintains that his practice is not in competition with the Foundation, in the two and one-half weeks between the start of Dr. Gant's practice in Seth and the hearing, twenty one former patients requested their medical records be transferred to Dr. Gant's office.

In *Torbett v. Wheeling Dollar Sav. & Trust Co.,* 173 W.Va. 210, 314 S.E.2d 166, 169 (1983) we held that the existence of an employer's interest requiring protection from the employee is a question of fact for a jury or trial court sitting as a fact finder. In the present case, the trial court sitting as a fact finder determined that the Foundation had met its burden of proving an interest requiring protection from the employee. In Syllabus Point 5, *Saunders v. Roselawn Memorial Garden, Inc.,* 152 W.Va. 91, 159 S.E.2d 784 (1986), we stated:

> A finding of fact made by a trial chancellor or by a trial court sitting in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by this Court on appeal unless the evidence plainly and decidedly preponderates against such finding.

*See Torbett, supra,* 173 W.Va. at 214, 314 S.E.2d at 170.

---

employed by the Foundation; and (3) was aware of and even modified the restrictive covenant.

2. *Reddy* identified two assets, in addition to customer goodwill, that employers traditionally seek to protect with restrictive covenants: (1) special information imparted to the employee; and, (2) skills acquired by the employee on the job. *Reddy, supra,* 171 W.Va. at 374, 298 S.E.2d at 912.

3. Both Dr. Gant and the Foundation desire to provide medical services to the same area. Al-

though Dr. Gant's patients prefer his services, this preference is not evidence that enforcement of the covenant would be injurious to the public.

4. *Reddy, Id.* 171 W.Va. at 383, 298 S.E.2d at 921, found a similar restrictive covenant "sufficiently reasonable that it is not invalid on its face."

5. Dr. Gant maintains that the Foundation, through discovery, should have obtained the additional data concerning his practice. We note Dr. Gant never presented the data about his practice.

The Foundation met its burden of proving it had legitimate interests that its covenant was designed to protect and, therefore, the restrictive covenant is presumptively enforceable.

### III

Because the Foundation met its burden of proving the reasonableness of the restrictive covenant and a need for protection, the burden of proof shifted to Dr. Gant to show the covenant should not be enforced in its entirety. Syllabus Point 5, *Reddy, supra.* In Syllabus Point 4, *Reddy, supra,* we stated:

An employee may rebut the presumptive enforceability of a restrictive covenant by showing: (1) that he has no "trade assets" of the employer to convert; (2) that such "trade assets" as he has belong to him and not to the employer; (3) that the employer could be equally well protected by a narrowed covenant; or (4) that the employer has had time to recoup any extraordinary investment in the employee.

Dr. Gant maintains that the Foundation not only recovered its initial costs incurred for him at the start of his practice of medicine, but in the five years he worked for the Foundation, the Foundation earned fees that more than compensated it. In support of this argument Dr. Gant noted that during the first seven months of 1987 he was paid only $56,847.95 but generated $150,953.97 in fees collected by the Foundation. However, the Foundation seeks to enforce its covenant, not to recover any initial costs it incurred in hiring Dr. Gant, but rather to protect the goodwill of the patients it served for over 30 years.[6] Without a covenant to protect the Foundation, Dr. Gant would be able to use the goodwill of sufficient patients to allow him to open his own practice—goodwill he gained while working in a *risk free* environment. The Foundation bore costs of Dr. Gant's acquisition of patient goodwill while they paid him a salary over the course of his five year employment in excess of $500,000.[7] Thus, Dr. Gant failed to demonstrate that a narrowed covenant would equally well protect the Foundation's interest in the goodwill of its patients.

For the above stated reasons the judgment of the Circuit Court of Boone County is affirmed.

Affirmed.

MILLER, Justice, dissenting:

My disagreement with the majority is its rigid adherence to a formulation which was designed to provide some flexibility in this area of the law. *See Reddy v. Community Health Foundation of Man,* 171 W.Va. 368, 298 S.E.2d 906 (1982).

One needs only to read Part III of the majority's opinion to realize how it has twisted the facts. It does not mention the critical fact that motivated Dr. Gant's leaving Hygeia Facilities Foundation, Inc., which was his doctor's advice to do so because his stressful working conditions caused hypertension, colitis, and weight loss. The majority grudgingly admits that Dr. Gant was bringing in far more in fees than he was being paid by Hygeia. In the last seven months, it was almost a 3-to-1 ratio, i.e. $56,848 to $150,953. Moreover, Hygeia never showed any material financial loss from Dr. Gant's departure. It did not have any extraordinary investment in Dr. Gant, as he came to its clinic without Hygeia having helped him on his medical

---

**6.** *See Reddy, supra* 171 W.Va. at 376–77, 298 S.E.2d at 914 for a discussion of the need for judicial modification when an employer's legitimate interest in recoupment of special training costs is protected by an overly broad restrictive covenant.

**7.** Dr. Gant also argues that it would be a material hardship for him to practice somewhere other than the Seth area because his home and extended family are located there. While we are in sympathy with Dr. Gant's interest in practicing medicine in southern West Virginia, the covenant does not preclude such a practice outside the thirty (30) air mile radius of Whitesville for a three (3) year period.

school expense. Thus, Dr. Gant had rebutted the criteria established in Syllabus Point 4 of *Reddy*.[1]

Consequently, the majority is forced in Part III to invent a new hurdle, i.e., that the goodwill of the patients of Hygeia was what the covenant was designed to protect. One may search *Reddy* in vain to find this factor as a part of its formula.

Finally, in a case like this, there is something more involved than a mere incantation of economic and accounting terminology. There is a vital public issue at stake which is accessible health care to the citizens of our State. There is no question but that this State lacks physicians who are willing to practice in rural areas. Consequently, under these conditions, it is absurd to suggest, as does the majority, that somehow Hygeia will lose any significant amount of business by Dr. Gant's going into practice. Indeed, Dr. Gant's testimony is that he is involved in a limited office practice. If patients need diagnostic tests, he refers them to Hygeia.

Courts which have had occasion to discuss the question of restrictive covenants for physicians recognize that in order to uphold such a covenant, it must be demonstrated that the public will not suffer by being denied the medical services precluded by the covenant. Typical is *Ellis v. McDaniel*, 95 Nev. 455, 459, 596 P.2d 222, 225 (1979), where the court concluded:

"If Dr. Ellis is not permitted to practice his specialty there, patients in need of orthopedic services will be forced to travel great distances at considerable risk and expense in order to avail themselves of such services. Thus, in the instant case, the public interest in retaining the services of the specialist is greater than the interest in protecting the integrity of the contract provision to its outer limits."

*See also Odess v. Taylor*, 282 Ala. 389, 211 So.2d 805 (1968); *Damsey v. Mankowitz*, 339 So.2d 282 (Fla.App.1976), *cert. denied*, 345 So.2d 421 (Fla.1977); *Dick v. Geist*, 107 Idaho 931, 693 P.2d 1133 (1985); *Iredell Digestive Disease Clinic v. Petrozza*, 92 N.C.App. 21, 373 S.E.2d 449 (1988), *aff'd*, 324 N.C. 327, 377 S.E.2d 750 (1989); *Williams v. Hobbs*, 9 Ohio App.3d 331, 460 N.E.2d 287 (1983); *New Castle Orthopedic Assoc. v. Burns*, 481 Pa. 460, 392 A.2d 1383 (1978).

Here, Hygeia did not demonstrate that the public would not suffer by being denied Dr. Gant's medical services.

I am authorized to state that Justice McHUGH joins me in this dissent.

1. Syllabus Point 4 of *Reddy* states:
    "An employee may rebut the presumptive enforceability of a restrictive covenant by showing: (1) that he has no 'trade assets' of the employer to convert; (2) that such 'trade assets' as he has belong to him and not to the employer; (3) that the employer could be equally well protected by a narrowed covenant; or (4) that the employer has had time to recoup any extraordinary investment in the employee."