693 P.2d 1133

**Carole N. DICK, Patrick Desmond, Robert S. Lobb, Jr., Jane Bennett Munro, Russell Newcomb, Donald G. Pica, Jerome R. Rees, Charles W. Schabacker, J. Laird Seaich, S.J. Smith, George W. Warner, and Joseph A. Weinberg, dba Twin Falls Clinic, Plaintiffs-Appellants,**

v.

**Harold R. GEIST, and Paul V. Miles, Defendants-Respondents.**

No. 14310.

Court of Appeals of Idaho.

Jan. 9, 1985.

Robert W. Stephan of Stephan, Slavin, Eaton & Stephan, Twin Falls, for plaintiffs-appellants.

Edward L. Benoit, of Benoit, Alexander & Sinclair, Twin Falls, for defendants-respondents.

SWANSTROM, Judge.

The plaintiffs, all doctors of medicine, are members of an unincorporated association called the Twin Falls Clinic. The defendants, Dr. Harold Geist and Dr. Paul Miles, were also members of the Clinic until they resigned in July 1979. After their resignations, Geist and Miles continued to practice pediatrics and neonatology in Twin Falls. The plaintiffs brought this suit to enforce a restrictive covenant in the

agreement signed by Geist and Miles when they became members of the Clinic. Initially, the plaintiffs also sought special and punitive damages for the alleged breach of the restrictive covenant.

The district court issued a temporary restraining order on August 31, 1979. After a hearing on September 10, the court dissolved the temporary restraining order and denied the plaintiffs' request for a preliminary injunction—no action, however, was taken on the claim for damages. A judgment was entered and the plaintiffs moved for permission to appeal by certification. This motion was denied. The parties then stipulated that the claim for damages should be dismissed and the court issued a final judgment. The plaintiffs brought this appeal.

The issue on appeal is whether a permanent injunction, enjoining Geist and Miles from practicing medicine in accordance with the terms of the restrictive covenant, should have been or should now be issued. Geist and Miles filed a motion to dismiss the appeal as moot. They argue that the restrictive covenant, which was to apply for two years from the date of disassociation, expired in July 1981 and the plaintiffs are therefore not entitled to injunctive relief. We deny the motion to dismiss and affirm the district court's denial of a preliminary injunction.

■■■ Our Supreme Court has held that an appeal may be dismissed "when it appears that only a moot question is involved." *Downing v. Jacobs,* 99 Idaho 127, 127–28, 578 P.2d 243, 243–44 (1978) (involving a covenant not to compete which had lapsed). The court, however, has also held that "[w]here issues of substantial public interest are presented by an appeal, it should not be dismissed as moot." *Robinson v. Bodily,* 97 Idaho 199, 200, 541 P.2d 623, 624 (1975). The *Robinson* court noted that similar issues were likely to arise again and that the facts of the case were such that the issues presented had not been

fully resolved by subsequent events. *Id.* See also *School District No. 351 Oneida County v. Oneida Education Association,* 98 Idaho 486, 567 P.2d 830 (1977). We believe that the instant case presents an issue of substantial public interest—i.e., under what circumstances will a physician be enjoined from practice in accordance with a restrictive covenant. It is also an issue which is likely to arise again, both as to the Twin Falls Clinic and as to other clinics engaged in similar employment practices. *See Marshall v. Covington,* 81 Idaho 199, 339 P.2d 504 (1959) (also involving a restrictive covenant and the Twin Falls Clinic). We will therefore address the merits of the appeal even though "as a practical matter we are unable to grant appellant[s] any relief." *Robinson v. Bodily,* 97 Idaho at 200, 541 P.2d at 624.[1]

■■■ The Idaho Supreme Court has adopted the general rule that restrictive covenants

> will be enforced when they are reasonable, as applied to the covenantor, the covenantee, and the general public; they are not against public policy, and any detriment to the public interest in the possible loss of the services of the covenantor is more than offset by the public benefit arising out of the preservation of the freedom of contract.

*Marshall v. Covington,* 81 Idaho at 203, 339 P.2d at 506. The restrictive covenant in the present case provided:

## ARTICLE XIX—MEMBERS RESTRICTED IN RIGHT TO RE-ENGAGE IN PRACTICE

Each Member of this Association (whether now a Member or afterwards becoming a Member) does hereby agree that in the event of his separation from this Association, in any manner or for any cause, he shall not practice medicine or surgery within a radius of twenty-five (25) miles from Twin Falls, Idaho, for a

---

1. Appellants apparently want us to apply the restrictive covenant *now* even though the time period has expired. They have cited no authority indicating that we have the power to take such action. In any case, we need not address this question because of the result we reach.

period of two (2) years following such separation. The Executive Committee shall have authority in its discretion to waive the restrictions of this Article in any case. Members who have ten (10) years' active practice in the Association and have attained the age of sixty-five are not bound by this restriction.

The district court held that

the restrictions contained in the Articles of Association providing for non-competition of former members who resign within an area of 25 miles of Twin Falls for a period of two years are valid and enforceable contractual provisions. The area contained in such restriction is not unreasonable; and the time limitation provides a reasonable period of time.

The court, however, also concluded that the detriment to the public interest in the loss of Geist and Miles' services outweighed the benefit derived from enforcing the covenant. The court thus refused to grant injunctive relief. It is this conclusion which is challenged by appellants and which we must address on appeal. We will assume without deciding, for purposes of this opinion, that all other requirements for the issuance of an injunction have been met.

From the record we summarize the following evidence supporting the findings and conclusions of the trial court. Much of this evidence is uncontradicted. Before Geist and Miles left the Clinic there were eight pediatricians in Twin Falls—four within the Clinic and four outside the Clinic. One of those within the Clinic left Twin Falls, sometime after Geist and Miles resigned, in order to pursue his career in Connecticut. Therefore, without Geist and Miles, Twin Falls would have had the services of only five pediatricians. There was conflicting testimony in the record regarding the need of Twin Falls for pediatricians; but, no fewer than six doctors testified that five pediatricians were *not* sufficient to provide the necessary care in Twin Falls and the surrounding area.

In addition, there was testimony to the effect that six to eight family practitioners in Twin Falls also provided care for newborns. The crucial difference, however, is that a family practitioner has neither the training nor the experience to provide care to critically ill newborns. This category makes up about 5–10% of the births in the Twin Falls area and it is within this category that the public interest in allowing Geist and Miles to practice outweighs the admittedly strong public interest in preserving the freedom of contract.

Magic Valley Memorial Hospital (MVMH), located in Twin Falls, is classified as a level II facility. Such a hospital has a neonatal intensive care unit with the capability of stabilizing, and in many cases, treating critically ill newborns. There are five level II hospitals in Idaho. Of those five, however, only the hospital in Boise and MVMH have the capability for long-term respiratory care. The nearest level III hospitals are in Salt Lake City and Portland and the most critically ill newborns are often transferred to those hospitals after stabilization at one of the Idaho hospitals. MVMH serves an area extending north beyond Sun Valley, south to northern Nevada, west to the Gooding area and east to the Rupert-Burley area. This area encompasses a population of over 100,000 people.

Geist and Miles played a significant role in developing and maintaining the neonatal intensive care unit at MVMH. Along with two other pediatricians, a Dr. Wright and a Dr. Katz, they provided care for 90% of the critically ill newborns at MVMH. Substantial testimony was presented which clearly indicated that the neonatal unit at MVMH would have suffered significantly without the services of Geist and Miles. Dr. Wright testified that Dr. Katz was trying to "phase himself out" of the intensive care practice. Although two more pediatricians, both relatively new to Twin Falls, indicated a willingness to take up part of the slack had Geist and Miles been enjoined from practice, one of these stated that he had no special interest in treating critically ill newborns at the neonatal unit. Such an interest is important because pro-

viding care for even one critically ill newborn per month adds a tremendous burden to a doctor, in terms of time spent at the hospital and away from his office practice. According to Dr. Wright, the treatment of critically ill newborns involves an "intensive, exhausting type of care that requires long hours." As a consequence, many pediatricians are reluctant to engage in much neonatal intensive care. The evident result would have been that Dr. Wright would have had to shoulder an even greater burden of providing care for critically ill newborns. In summary, there is overwhelming evidence to indicate that, as Dr. Wright testified, enjoining Geist and Miles would have had "a very, very drastic impact in terms of providing care [in the Twin Falls area]."

█ Appellants also contend that Geist and Miles could have relieved some of the burden of normal newborn care in Twin Falls by setting up practice in, for example, Burley. Burley is normally served by Twin Falls pediatricians and is outside the twenty-five mile limit. This, however, would have done nothing to alleviate the burden of caring for critically ill newborns. Even if Geist and Miles had set up their practice in Burley, they would still have been required to go to MVMH to treat the critically ill newborns—something they could not have done if the restrictive covenant had been enforced.

█ A final contention by plaintiffs concerns the public interest in Geist and Miles' services. In *Bauer v. Sawyer*, 8 Ill.2d 351, 134 N.E.2d 329 (1956), the Illinois Supreme Court pointed out: "In any case, there is no reason why Dr. Sawyer cannot serve the public interest equally well by practicing in another community." 134 N.E.2d at 331. Appellants contend that Geist and Miles could have served the public in another geographical area and thus the public detriment in enjoining their practice would not have been greater than the public benefit in enforcing the restrictions. We will not be drawn into this type of speculative comparison involving some hypothetical community which Geist and Miles might have served. In our view, the critical focus should be upon the community where the restriction would apply. The known needs of that community are to be examined and weighed in determining whether specific enforcement is appropriate. We thus decline to follow the rule in *Bauer v. Sawyer, supra*. It has been shown, *in this case*, by sufficient competent, though disputed, evidence that the welfare of the public in the Twin Falls area would have been seriously impaired by enjoining Geist and Miles from practicing their specialty. This consideration outweighs the public interest in enforcing the restrictive covenant against these two doctors. We hold, therefore, that the district court did not err in refusing to issue the requested injunction.

█ By our holding we do not suggest that a breach of a restrictive covenant may allow no remedy. Even though injunctive relief may be inappropriate in some instances there remains the possibility of collecting damages, depending upon the provisions of the particular agreement and upon the circumstances of the breach. In this instance, however, for reasons not germane here, the plaintiffs elected to forego their claims for damages in order to pursue this appeal from denial of injunctive relief.

The judgment is affirmed. Costs to respondents. No attorney fees on appeal.

WALTERS, C.J., and BURNETT, J., concur.