533 So.2d 877 (1988)
Scott DUNKIN, D.O., Appellant,
v.
BARKUS & KRONSTADT, D.O.'s P.A., Appellee.
No. 88-1975.
District Court of Appeal of Florida, Third District.
November 1, 1988.
Rehearings Denied December 7, 1988.
Adams, Hunter, Angones, Adams, Adams & McClure and Christopher Lynch, Miami, for appellant.
Roger A. Bridges, Coral Gables, for appellee.
Before SCHWARTZ, C.J., and HUBBART and BASKIN, JJ.
SCHWARTZ, Chief Judge.
This is an appeal[1] from an order enjoining the appellant from an alleged violation of a non-competitive agreement. We conclude that the trial court erroneously determined that the conduct in question violated the contract between the parties and therefore reverse the order under review.
In 1985, Dr. Dunkin, an osteopathic physician specializing in obstetrics and gynecology, was employed by the defendant Barkus & Kronstadt, D.O.'s, P.A., which was also engaged in that practice. His employment agreement provided in part as follows:
14. Restrictive Covenant. As of the date hereof, and during the term of his employment and for a period of twenty-four (24) months after termination of his employment hereunder, whether by termination of this Agreement, by wrongful discharge, or otherwise, Employee shall not, directly or indirectly, within the "Area of The Corporation" (as defined *878 below) enter into or engage in or consult with any form of osteopathic medical practice in competition with the business of the corporation in the nature of obstetrics and gynecology, as it now exists or may exist in the future, either as an individual on his own account, or as a partner, or joint venturer, or as an officer, director, stockholder, agent, employee for any person, firm, partnership, corporation, or other entity... . (e.s.)
In 1988, Dr. Dunkin left the P.A. and set up an ob-gyn practice with Dr. Fox, another such specialist. They conducted their practices at two offices, both of them outside the area described in the agreement. The present controversy arose, however, because Dr. Dunkin has made deliveries, and desires to do so in the future, at an osteopathic hospital  the only one at which he has privileges  which is located within the non-competitive area. In the order now under review, the trial court held that the delivery of babies at the hospital violated the Dunkin-P.A. agreement and therefore enjoined him from doing so during the two-year period. We do not agree with this ruling.
While there is no question of the general validity of the non-competitive agreement under section 542.33(2)(a), Florida Statutes (1987) nor of the reasonableness of the time and area limitations, we find that the hospital deliveries in question here do not amount to the "competition" from which Dr. Dunkin agreed to refrain. It is well settled that, since non-compete contracts and the statute which permits them are in derogation of the common law rule precluding agreements in restraint of trade, any such agreement must be construed strictly against the purported restraint. See Bolen Int'l, Inc. v. Medow, 191 So.2d 51 (Fla.3d DCA 1966), cert. denied, 200 So.2d 808 (Fla. 1967); Storz Broadcasting Co. v. Courtney, 178 So.2d 40 (Fla.3d DCA 1965), cert. denied, 188 So.2d 315 (Fla. 1966).
Viewed in this light, or simply giving the contract a common sense reading of its language, we think that actual deliveries are not  as the contract says  "in competition with the business of [any such] corporation." "Competition" is defined as "the effort of two or more parties acting independently to secure the business of a third party by offering the most favorable terms." Webster's New Collegiate Dictionary (1977). It seems clear that any such "competition" for prospective ob-gyn patients occurs, if at all, where the doctor seeks to attract clientele at his office. In contrast, there is plainly no competition among doctors for an obstetrical patient, who has invariably already secured her physician, at the hospital where the delivery is to take place. Bearing in mind that it is only the phraseology of this particular agreement with which we are concerned,[2] we hold, in conformance with the decided cases on related issues, that Dr. Dunkin is free to make deliveries at the hospital in question. See State ex rel. Youngman v. Calhoun, 231 S.W. 647 (Mo. App. 1921) (contract under which physicians agreed not to "establish" themselves within given area did not preclude making calls within area or receiving calls at outside office from patients within area); Oates v. Leonard, 191 Iowa 1004, 183 N.W. 462 (1921) (physician's treatment of emergency cases within proscribed area not in violation of non-competitive agreement); Haldeman v. Simonton, 55 Iowa 144, 7 N.W. 493 (1880) (physician's agreement not to resettle in town where he sold practice did not preclude practicing there while maintaining office in another town); see also Midland Lumber & Coal Co. v. Roessler, 203 Wis. 129, 233 N.W. 614 (1930) (agreement not to engage in lumber business within ten miles of prior business did not preclude contracting for sale of lumber within restricted area while maintaining business premises outside area); McCarty v. Constable, 221 A.D. 307, 223 N.Y.S. 484 (1927) (same). See generally *879 Dick v. Geist, 107 Idaho 931, 693 P.2d 1133 (Idaho App. 1985).
REVERSED.
NOTES
[1] Pursuant to Fla.R.App.P. 9.130(a)(3)(B).
[2] We note that the contract does not merely provide a blanket prohibition against any practice of the ob-gyn specialty within the area and thus do not pass upon the applicability of such a clause to the present issue.