H. Scott Beims Rawlins County Attorney 509 Main, P.O. Box 449 Atwood, Kansas 67730-0449
Dear Mr. Beims:
As County Attorney for Rawlins County and attorney for the Rawlins County Health Center (formerly Rawlins County Hospital) you ask our opinion on whether the principal and interest on bonds issued by Rawlins County under K.S.A. 19-4601 et seq. must be paid: (1) only from gross revenues generated by the limited care residential facility for which the bonds were issued, (2) from gross revenues generated by the entire hospital facility, and, if so, whether the hospital must make payments if it is not profitable solely from its gross revenues, and (3) from local trust money received by the hospital and used for operating revenues. You also ask whether the physical facilities of the hospital have any "liability" for the unpaid principal and interest on the bonds.
As background, you inform us and we determine from the authorizing bond resolution that the Rawlins County Board of County Commissioners issued $1,105,000 in revenue bonds on July 1, 1996, for the purposes of constructing, equipping and furnishing a limited care residential facility (the project).[1] The Rawlins County Commission acted under the authority of K.S.A.19-4601 et seq. in financing a portion of the costs of the project with revenue bonds and in stating the terms, details and conditions of the revenue bonds in Resolution No. 96-13, the bond resolution. Rawlins County Hospital, now Rawlins County Health Center (RCHC), includes the limited care residential facility, and is managed by its Board of Trustees.[2] To date, only one quarter of the units in the limited care residential facility have been rented, and all bond reserve funds have been depleted; consequently, you advise us, Rawlins County failed to make its July 1, 1999, principal and interest payment of $70,171.25 (only $35,171.25 was forwarded to the Fiscal Agent under Section 23, Resolution 96-13). According to your letter, the hospital showed a loss for the fiscal year ending June 1, 1999, if proceeds from a special tax levy are excluded from RCHC's income.
K.S.A. 19-4617 requires county commissions and hospital boards to pledge a hospital's gross or net income to payment of principal and interest on bonds. Rawlins County's bond resolution, Section 17, secures its hospital revenue bonds with a "first and prior lien on and an irrevocable pledge of the Gross Revenues" derived from the "Facility." The lien and pledge are subject only to payment of the Facilities' operating and maintenance expenses,[3] which also may be funded by an annual tax levy.[4] The County additionally pledges, and the Board consents to the pledge of, gross revenues to payment of any reserve accounts required by the bond resolution; Section 22(C) creates a bond reserve account, which must be funded in the "maximum required amount" of $100,000 after operation and maintenance and principal and interest are paid.
"Gross Revenues" are defined in Section 1 of the bond resolution as "all revenues, income, receipts, rents and other monies derived from the operation of the Facility, including . . . rates, fees, charges . . . agreements respecting Medicare, Medicaid and Blue Cross . . . gifts, grants, bequests, contributions and donations . . . exclusive of funds generated in accordance with any special tax levy." Gross revenues are not to be mingled with any other funds.[5] "Facility" is defined in the same section as being the "Hospital" (as defined in K.S.A. 19-4601[c]), "including the Project, any medical care facility . . . limited care residential facility . . . owned by the County and operated by the Hospital Board, and shall include all improvements, extensions and enlargements thereto hereinafter constructed or acquired." The "Project" means "the portion of the Facility comprising a limited care residential facility to be constructed."[6]
K.S.A. 19-4617 requires that a commission and board covenant to "fix, maintain and collect such fees and charges for the hospital as will produce revenues sufficient to pay the reasonable cost of operating and maintaining the hospital and to provide [funds] in an amount adequate to promptly pay both principal and interest onsuch bonds and to provide a reasonable reserve fund." Accordingly, in Section 16, the County Commission covenants to cause the Hospital Board, which expressly agrees, to fix and collect revenues from the Facilities' services to generate gross revenues sufficient to pay, first, Facility operation and maintenance and, next, principal and interest on the revenue bonds. The County further covenants to cause the Hospital Board to generate net income from the Facility to derive not less than 120% of the succeeding year's revenue bond principal and interest.
K.S.A. 19-4620 authorizes a commission and board to make further covenants to secure the "prompt payment of the principal and interest upon revenue bonds," including any covenant as to the liabilities and duties arising from pledges and agreements entered into in issuing bonds."[7] All covenants and agreements are binding on the parties and their successors and are enforceable by actions at law or in equity brought by bondholders against the commission, board or their officers, agents, employees and successors.[8] Accordingly, in Resolution No. 96-13, the bonds are a "first and prior lien on the gross revenues" (subject only to the payment of "reasonable operation and maintenance")[9]
and the Board agrees to "make good on any deficiency" in principal or interest by making payments out of the first available gross revenues received from the Facility.[10] If the County defaults in payment of principal or interest on the revenue bonds and the default continues for thirty days, Section 34 of the bond resolution permits the owners of not less than 25% of the bonds to declare all outstanding principal to be immediately due and payable, subject to the condition that if all arrears are paid in full and all defaults are cured, the owners may rescind their declaration of default. If at least ten percent of outstanding owners wish to assert their rights under the contract (i.e. Resolution No. 96-13), under Section 31 they may bring actions in mandamus, in equity, at law or for injunctive relief to enforce the provisions of Resolution No. 96-13, including the right to require the County, the Board, their officers, agents and employees to account "[a]s if they were the trustees of an express trust."
By its terms and by law, Resolution No. 96-13 constitutes a contract between the County, the Hospital Board and the owners of the bonds.[11] In Kansas, if the language of a written instrument is clear, the rules of construction are unnecessary and the contract shall be enforced according to its terms.[12] If a contract must be construed, the parties' intent is derived from the entire instrument by construing all provisions in harmony with each other.[13] Any ambiguities that do exist are construed against the drafter.[14] Finally, parties are assumed to contract in reference to all existing, applicable law.[15]
It is our opinion that the bond resolution in its definitions and pledges and the applicable statute both require bond payments be made from gross revenues generated by the Hospital Facility as a whole, not just by the limited care residential facility. The construction of the limited care residential facility comprises the project; payments are made from Facility revenues and, by definition, the project is one component of the Facility. This interpretation is consistent with the purpose of the drafters of the resolution to repay the bonds promptly and in full. The sections of the Resolution cited above underscore the County's intention to insure adequate revenues are generated and segregated to make all payments; this intent is further supported by the decisive remedies granted the bondholders, who may bring various legal and equitable lawsuits against Commission and Board personnel and may declare the entire issue in default after thirty days and collect from the defaulting parties all principal and past due interest.
It is likewise our opinion that RCHC may not refuse to make payments because gross revenues of the Facility are insufficient. It is the obligation of both the Commission and the Board to insure revenues are maintained at a level which will be adequate to make principal and interest payments, after operation and maintenance of the Facility are funded at a reasonable level. This pledge is required by the enabling statute. In fact, the Commission and Board are obligated by the Resolution to set and generate sufficient revenues to segregate 120% of money needed to meet bond payments, as well as fund a reserve account. Again, the bondholders are provided remedies against the governing bodies, their officers, agents and employees "to account as if they were the trustees of an express trust." This onerous obligation once again reflects the intent of the Resolution to strictly enforce the County's statutory and contractual obligation to promptly meet its payment schedule.
We have been provided with RCHC's unaudited fiscal year 1999 financial statements through May 31, 1999. The profit and loss statement shows RCHC operating with a net gain in excess of $237,000, if tax appropriations are deleted from total revenues and depreciation is deleted from total operating expenses (as a non-cash expense). Additionally, RCHC's current assets show $864,733 in cash available to the Board, and $763,784 in accounts receivable (with less than one-third written off). It appears that, in fact, the Board and the Commission may have monies available from which to make principal and interest payments on the bonds and, thereby, avoid actions by unpaid bondholders.
It is our opinion that the local trust funds must be applied to debt service on the revenue bonds. The definition of gross revenues, above, includes bequests and gifts to the Facility. Therefore, unless the trust is expressly designated for a specific purpose (a fact which was not provided to us), it becomes gross revenue available from which to make principal and interest payments.
Your last question is whether a lien is placed on the physical hospital facilities in the event of a default on bond payments. We find no statute or Resolution provision placing a lien on the physical facilities, only on the gross revenues generated by the Facilities.
It is therefore our opinion that all past due and future principal and interest payments on the 1996 limited care residential facility revenue bonds must be paid by the first available gross revenues from the Hospital, that the Commission must cause the Board to generate such amounts for services as are sufficient to make debt service payments, fund the bond reserve account and maintain net income of at least 120% of the succeeding year's principal and interest requirements. It is also our opinion that the local trust must be mingled with gross revenues and applied to bond payments.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Nancy L. Ulrich Assistant Attorney General
CJS:JLM:NLU:jm
[1] K.S.A. 19-4601(e).
[2] K.S.A. 19-4601(a) and 19-4605.
[3] Resolution No. 96-13, Section 17.
[4] K.S.A. 19-4606(a).
[5] Resolution No. 96-13, Section 22.
[6] Resolution No. 96-13, Section 1.
[7] K.S.A. 19-4620(c).
[8] K.S.A. 19-4620.
[9] Resolution No. 96-13, Section 8.
[10] Resolution No. 96-13, Section 24.
[11] Resolution No. 96-13, Section 31; In re Cherokee County,Kansas Health Care Revenue Bonds, 262 Kan. 941, 950 (1996).
[12] Marquis v. State Farm Fire and Cas. Co., 265 Kan. 317,324 (1998).
[13] In re Cherokee County, Kansas Health Care Revenue Bonds, 262 Kan. at 453.
[14] Weber v. Tillman, 259 Kan. 457 (1996).
[15] Storts v. Hardee's Food Systems, Inc., 919 F. Supp. 1513
(D.Kan. 1996); In re Cherokee County, Kansas Health Care RevenueBonds, 262 Kan. at 950.