(388 P.3d 170)

No. 115,460

JAMES S. CUDE, JR., LISA CUDE, and ROBERT ANDERSON, Guardian and Conservator of RUTH ELEANOR CUDE, *Appellees*, v. TUBULAR & EQUIPMENT SERVICES, LLC, *Appellant*, and WAYNE E. BRIGHT, *Appellee*.

Opinion filed December 23, 2016.

*Paul Oakleaf*, of Independence, for appellant.

*Jill R. Gillett*, of Chanute, for appellees.

Before BRUNS, P.J., GREEN, J., and WILLIAM S. WOOLLEY, District Judge, assigned.

GREEN, J.: Following a bench trial, Tubular & Equipment Services, LLC, (TES) appeals from a civil judgment that it breached its written contract to purchase a tract of real estate from James S. Cude, Jr., Lisa Cude, and Ruth Eleanor Cude (collectively, the Cudes). TES specifically argues on direct appeal that the trial judge erred in admitting and considering the contents of a letter written

after the contract in determining whether TES had breached the written contract. TES contends that the examination of such evidence was barred by the parol evidence rule. We disagree. Accordingly, we affirm.

TES owned property that adjoined the Cudes' property. On April 27, 2011, the Cudes entered into a written contract to sell their land to TES for $80,000. The written contract was for the sale of their 40-acre tract. The closing was set for August 1, 2011. The contract contained a provision that required the Cudes to deliver marketable title "free from encumbrances, except easements, restrictions, zoning ordinances, and rights of way of record." If the Cudes failed to deliver marketable title, the contract provided that TES could declare it void.

On May 16, 2011, the Cudes obtained a Title Insurance Commitment for the property. After the contract was executed but before closing, TES sent the Cudes a letter, identifying a possible encroachment on the Cudes' property. The encroachment consisted of a neighbor's trailer home that was physically sitting, at least partially, on the Cudes' property. Both parties to the written contract made attempts to get the trailer home removed. The alleged encroachment was still an issue on the date of closing. Under a specific contract provision, TES extended the closing date to August 31, 2011.

On August 4, 2011, TES's attorney advised the Cudes that TES had made an agreement with the neighbor who owned the encroaching trailer home to have it removed. On August 22, TES's attorney, however, wrote a letter to the Cudes stating that TES would not pay the agreed upon contract price for the property. The Cudes understood this letter to mean that TES was "asking for a[nother] financial sum to be agreed on."

On August 30, 2011, TES's attorney informed the Cudes by letter that because the encroaching trailer home had not been removed, TES would not close the purchase of the 40-acre tract.

After TES refused to close, the Cudes relisted their property for sale. The Cudes sold the property to Wayne E. Bright for a total of $45,000. Deeds to the property from the Cudes to Bright were delivered at closing and recorded on April 2, 2012. Bright then made

a contract on April 6, 2012, to sell the property to TES for $50,000. Bright's deed to TES was dated April 10, 2012, and closing was held on April 11, 2012. The trial court later noted that it believed that "there was an agreement all along that [TES] was going to purchase this property from Mr. Bright."

The Cudes sued TES for breach of contract on June 26, 2013, claiming that TES had breached their earlier written contract of April 27, 2011. The petition also claimed misrepresentation and fraud based on the later sale between Bright and TES. Because the second cause of action is not relevant to the present appeal, it will not be discussed further.

Following a bench trial, the trial judge instructed the parties to submit proposed findings of fact and conclusions of law. After the parties submitted their proposals, the trial judge entered his decision in a memorandum opinion. The trial judge concluded that TES had breached its written contract with the Cudes.

In support of its conclusion, the trial court relied heavily on the following finding of fact: "On August 4, 2011, [TES's attorney] wrote [the Cude's attorney] advising that [TES] had taken steps to clear the way for closing in the near future by reaching an agreement with [the neighbor] regarding the moving of the trailer." The trial judge concluded that the letter from TES's attorney "removed the encroachment issue as an impediment to providing [marketable] title and the closing of the contract."

TES moved to reconsider the trial court's decision. A hearing was held on TES's motion. At the hearing, TES took particular issue with the trial judge's consideration of the August 4, 2011, letter, which TES's attorney wrote to the Cudes' attorney. At the close of his argument at the hearing, TES's attorney stated:

"I would ask the Court to reconsider its ruling and place no more evidentiary value on that one sentence of my August 4th letter than it would on anything else. Matter of fact, that should kind of be ignored by the Court simply because all the parties agreed that the only agreement between the parties is this contract that was Exhibit 1. That was the entire agreement, no others; and it required that the plaintiffs be prepared to deliver fair and marketable title, *which with the encroachment they could not do.*" (Emphasis added.)

In response to this contention, the Cudes argued the following:

"The Court is correct in its decision. It's correct in [TES] did not have an objection to closing and then they just failed to close on the date specified . . . . They ended up getting the property, and so there was no impediment to them being able to get that property. They just simply did not want to pay the price that we listed in the contract and breached that contract."

The trial judge denied TES's motion for reconsideration. TES filed a timely notice of appeal.

*Did the Trial Judge Err in Considering Letters Written by TES's Attorney to Determine Whether TES Breached the Written Contract?*

TES argues on appeal that "the trial court erred in admitting, over its objection, evidence outside of the contract to determine whether the contract had been breached." TES further "argues that the contract was complete and unambiguous; hence, introduction of additional terms violated the parol evidence rule." TES specifically takes issue with the trial court considering the August 4, 2011, letter written by its attorney and sent to the Cudes. In response, the Cudes argue that the issue is not properly before this court because the parol evidence rule was not raised below.

Generally, issues not raised before the trial court cannot be raised for the first time on appeal. *Wolfe Electric, Inc. v. Duckworth,* 293 Kan. 375, 403, 266 P.3d 516 (2011). This rule exists so that appellate courts do not interfere with trial court litigation. *Wolf Electric,* 293 Kan. at 403. Also, it is better for the parties to fully brief and argue the issue at the trial court level instead of an appellate court deciding the issue without having the benefit of reviewing the briefs and the trial court's analysis. *Wolf Electric,* 293 Kan. at 403.

The Cudes are correct that TES did not specifically argue the parol evidence rule in its "Proposed Findings of Fact and Conclusions of Law." The Cudes also argue that TES failed to make a parol evidence argument in its motion to reconsider. The Cudes correctly point out that the motion to reconsider was based on the notion that the trial court's decision was contrary to the evidence that was presented at trial. As stated earlier, TES's attorney made the following argument at the hearing on the motion to reconsider:

"I would ask the Court to reconsider its ruling and place no more evidentiary value on that one sentence of my August 4th letter than it would on anything else. Matter of fact, that should kind of be ignored by the Court simply because all the parties agreed that the only agreement between the parties is this contract that was Exhibit 1."

The Cudes are correct that TES's attorney did not specifically use the words "parol evidence." Still, a pragmatic reading of TES's argument leads to the conclusion that it was the functional equivalent of a parol evidence argument. TES's attorney was effectively arguing that the trial court erred when it considered the letter dated August 4, 2011, because the letter was evidence outside the written contract, and the written contract was the only agreement between the parties. Thus, we will assume for the sake of argument that TES's attorney was invoking the parol evidence rule in his argument.

Alternatively, the Cudes argue that the August 4, 2011, letter was not used to interpret or define the written contract. Thus, the Cudes contend that the letter did not constitute parol evidence. Moreover, the Cudes assert that the August 4, 2011, letter showed that TES was withdrawing the encroachment issue as an impediment to furnishing marketable title and to the closing of the written contract.

The parol evidence rule was plainly stated in *Thurman v. Trim,* 206 Kan. 118, Syl. ¶ 2, 477 P.2d 579 (1970): "When a contract is complete, unambiguous and free of uncertainty, parol evidence of a prior or contemporaneous agreement or understanding, tending to vary or substitute a new and different contract for the one evidenced by the writing is inadmissible."

The purpose of the parol evidence rule is to prohibit evidence of *prior* or *contemporaneous* agreements from being used to define, interpret, or contradict unambiguous terms of a written contract. See *Trim,* 206 Kan. 118, Syl. ¶ 2. Here, the August 4, 2011, letter was not written before, or contemporaneously with, the written contract. The letter was written after the written contract between the Cudes and TES was executed. Indeed, the written contract was entered into on April 27, 2011. The letter at issue was sent to the Cudes by TES's attorney on August 4, 2011.

Further, the substance of the August 4, 2011, letter sent by TES's attorney was not offered for the purpose of adding to or varying the terms of the written contract of April 27, 2011. The Cudes correctly point out that the trial judge did not consider the August 4, 2011, letter to define or interpret the written contract. The letter was sent to the Cudes to let them know that the trailer home was no longer an impediment to closing.

In quoting from the August 4, 2011, letter, the trial judge stated the following in his memorandum opinion:

"On August 4, 2011, [TES's] attorney wrote [the Cudes' attorney] advising that [TES] 'had taken steps to clear the way for closing in the near future by reaching an agreement with [the owner of the trailer home] regarding the moving of the trailer' . . . . This letter therefore removed the encroachment issue as an impediment to providing [marketable] title and the closing of the contract."

The trial judge reiterated this finding at the hearing on TES's motion for reconsideration. From his findings, it is clear that the trial judge did not consider the August 4, 2011, letter to vary, add to, or contradict the terms of the written contract of April 27, 2011. The trial judge considered the August 4, 2011, letter, which was drafted after the written contract was executed, to determine if TES had waived the trailer home as an impediment to closing. "Whether any particular term of a written contract has been modified or waived by a subsequent agreement is a question of fact for the trial court." *Thoroughbred Associates, L.L.C. v. Kansas City Royalty Co., L.L.C.*, 297 Kan. 1193, 1209, 308 P.3d 1238 (2013) (citing *Coonrod & Waltz Constr. Co., Inc. v. Motel Enterprises, Inc., et al.*, 217 Kan. 63, Syl. ¶ 2, 535 P.2d 971 [1975]). Here, the trial court determined that the August 4, 2011, letter demonstrated that TES had waived the trailer home as an impediment to furnishing marketable title to the property. Thus, the trial court concluded that TES had breached the contract when it refused to close the purchase of the property according to the terms of the written contract.

Without direct authority, we draw guidance from our Supreme Court decision in *Wheeler v. Beem*, 111 Kan. 700, 208 P. 626 (1922). Though *Wheeler* is not directly on point with our case, it offers help as it relates to the trial judge's treatment of TES's

letters. The contract for the sale of property in *Wheeler* "provided that the land should be free from incumbrance [*sic*]." *Wheeler*, 111 Kan. at 701. Before the seller entered into the contract for sale with the purchaser, the seller granted an easement on the property. The easement was granted to the City for the construction and maintenance of a sewer. The purchaser's attorney inspected the title and, although the attorney identified other issues that needed to be resolved, he orally told the seller's attorney that he did not consider the sewer easement an encumbrance. The purchaser's attorney informed the seller that the purchaser would accept the property so long as the other issues were cleared up. The seller ultimately cured all the other issues relating to title, but the buyer refused to close.

The *Wheeler* court applied the doctrine of estoppel to prevent the purchaser from rejecting the property. The purchaser argued that estoppel could not be based on "statements which induce performance of acts which the party pleading estoppel was bound to perform." *Wheeler*, 111 Kan. at 703..In rejecting this argument, our Supreme Court held that when the seller relied on the statement of the purchaser's attorney that the sewer easement was not an encumbrance and when the seller cured all other issues with title, the purchaser was estopped from refusing to carry out the bargain absent a reasonable excuse. *Wheeler*, 111 Kan. at 703.

We note that this case is distinguishable from *Wheeler* in two ways: (1) The *Wheeler* court viewed the sewer easement as a benefit to the property being transferred and (2) the *Wheeler* court applied the doctrine of estoppel because the seller expended $250 to perfect title. *Wheeler*, 111 Kan. at 703. Nevertheless, the *Wheeler* court's analysis of the actions of the purchaser's attorney in waiving the easement as an impediment under the contract is analogous to the issue in this case.

On July 25, 2011, TES's attorney wrote a letter to the Cudes' attorney relaying that TES's attempts to move the trailer had not been successful and that TES was requesting a 30-day extension for the date of closing. On August 4, 2011, TES's attorney wrote a letter to the Cudes indicating that TES had entered into an agreement with the owner of the trailer home to have the trailer removed. TES

later sent a letter to the Cudes on August 30, 2011, indicating that it would not proceed with the purchase of the 40-acre tract because the trailer home had not been removed from the property.

After TES refused to close, the Cudes successfully removed the trailer from the property. It is reasonable to think that the Cudes may have been successful in removing the trailer between August 4, 2011, and August 31, 2011, had TES not told them that the trailer was no longer an issue to closing.

It is well settled that parties are always free to modify a written contract by a subsequent agreement, either written or oral. *Coonrod & Walz Const. Co., Inc. v. Motel Enterprises, Inc.*, 217 Kan. 63, 73, 535 P.2d 971 (1975) (citing *Todd v. Allen*, 18 Kan. 543, 545 [1877]). Subsequent agreements do not conflict with the parol evidence rule; only prior and contemporaneous agreements may not be shown. Here, TES's attorney's August 4, 2011, letter to the Cudes waived the encroachment issue as it related to the removal of the trailer. Thus, it was no longer an impediment to providing marketable title to the 40-acre tract.

In summary, the trial judge properly considered the August 4, 2001, letter to determine whether the trailer home was an impediment to closing after TES, through its attorney, told the Cudes that it had made an agreement with the trailer home's owner to remove it from the property. Much like our Supreme Court in *Wheeler* relied on the purchaser's attorney's assurance to the seller regarding the status of the easement as not an encumbrance, the trial judge here properly relied on TES's attorney's August 4, 2011, letter to the Cudes regarding the status of the trailer home as no longer an impediment to closing.

Moreover, Kansas law implies a duty of good faith and fair dealing as a condition in every contract except for contracts for employment-at-will. *Estate of Draper v. Bank of America, N.A.*, 288 Kan. 510, 525, 205 P.3d 698 (2009). This implied condition cannot be ignored in light of the facts of this case.

As we know, the Cudes were originally set to sell the property to TES for $80,000. At some point TES notified the Cudes of a potential issue with the encroaching trailer home. TES then sent a letter to the Cudes on August 4, 2011, to the effect that the trailer home

was no longer an impediment to closing. There was some indication in the record that TES was also attempting to renegotiate the price of the contract in a letter written August 22, 2011. Again, the letters are not available in the record. Finally, on August 30, 2011, TES notified the Cudes that it would not be closing the purchase of the property because the trailer home was still an issue. Eventually the Cudes sold the property to Wayne Bright for $45,000. Bright then sold the property to TES for $50,000. In its memorandum opinion, the trial judge summarized the events leading to Bright selling the property to TES:

"[TES] talked with Bright after Cude listed the property with a broker in early 2012, and gave Bright Cude's cell phone number so that he could contact Cude directly. After Bright entered into his contract with Cude, which was closed on or about April 2, 2012, when the deeds to Bright were recorded, Bright immediately entered into his contract with [TES] dated April 6, 2012, . . . and was ordered a few days before April 3rd. In other words, the agreement to sell by Bright to [TES] was already in the mix before Bright closed with Cude.

"The end result for [TES] is that [TES] was able to buy from Bright for $50,000.00 the real estate it thought was worth $80,000.00 when it contracted with Cude. The end result for Cude was that they lost the difference between the $80,000.00 purchase price in the [TES] contract and the $45,000.00 purchase price in the Bright contract . . . ."

Allowing TES to enjoy the property without consequence would allow TES to skirt the implied duty of good faith and fair dealing. Even more, TES did not have a reasonable excuse for refusing to close after it told the Cudes that the trailer home was no longer an impediment to closing. TES could not, in good faith, rely on the presence of the trailer home to invalidate the written contract. This is especially true in light of the letter written on August 22, 2011, in which TES attempted to renegotiate the sale's price of the written contract. If the buyer in *Wheeler* was not allowed to reassert the sewer easement as an encumbrance after his attorney orally maintained that the easement was not an encumbrance, TES should certainly not be allowed to instruct its attorney to write a letter to the Cudes telling them that the trailer home was no longer an issue and later refuse to close because the trailer home had not been removed from the property.

In conclusion, the letters considered by the trial judge did not

constitute inadmissible parol evidence because they were not prior or contemporaneous writings that varied or redefined the terms of the written contract. TES is incorrect in asserting that the letters introduced new terms to the written contract. Instead, the trial judge properly considered the letters written after the execution of the written contract to determine whether TES had waived the encroaching trailer home as an impediment to closing under the contract provision calling for marketable title. Thus, TES's parol evidence argument fails.

Affirmed.