NOT DESIGNATED FOR PUBLICATION

No. 117,400

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LONNY R. GEIER,
*Appellee*,

v.

GERALD SIMON, Trustee of THE GERALD AND
ROSEMARY SIMON REVOCABLE TRUST, and
JERRY SIMON, Individually,
*Appellants*.

MEMORANDUM OPINION

Appeal from Crawford District Court; OLIVER KENT LYNCH, judge. Opinion filed February 9, 2018. Reversed.

*John G. Mazurek*, of The Mazurek Law Office, LLC, of Pittsburg, for appellants.

*Sara S. Beezley*, of Beezley Law, LLC, of Girard, for appellee.

Before POWELL, P.J., STANDRIDGE, J., and STUTZMAN, S.J.

PER CURIAM: Gerald Simon appeals the district court's decision in a dispute arising from his purchase of real estate from Lonny Geier. The district court found the parties' agreements gave Geier broad hunting rights on the land he sold to Simon. For reasons explained below, we disagree with the district court and reverse.

1

Geier and Simon signed a three-page, typed document titled Real Estate Sale Agreement (Sale Agreement), dated February 6, 2014. The Sale Agreement listed Geier as the seller of an 80-acre tract—less a specified portion that the parties apparently considered to be somewhat less than 12 acres—to the Gerald and Rosemary Simon Revocable Trust for $116,281. Simon signed the Sale Agreement as a trustee of the Trust. The Sale Agreement required Geier to provide Simon an owner's title policy "subject to the usual reservations and exceptions." At closing, upon Simon's payment of the balance of the purchase price, Geier committed to deliver "a General Warranty Deed conveying the property" to Simon.

On the back of the typed Sale Agreement are several handwritten calculations and one statement, followed by the signatures of Geier and Simon (who this time signed with no designated capacity). The top part of this handwritten portion appears to mirror the terms shown in the typed document. First appears a calculation that matches the purchase price, determined as the product of 68.2 acres sold at $1,705 per acre. Next are the dimensions and location of the part of the tract that was not being sold, with the additional notation "10% Down Bals At Closing" [*sic*].

The handwritten part then addresses topics not contained in the Sale Agreement, under the heading Rent agreement (Rent Agreement). Below that is a further calculation, "60 Acres x 65.00 = $3900.00 Due on or before Jan 1," followed by "Lonny Geier Retains Farming and Hunting Rights As long As Rent is paid on or before Due date" [*sic*]. Geier's and Simon's signatures followed as the last things written on that page.

Geier filed suit against Simon on February 20, 2015, asking for a restraining order and a final order granting Geier "the right to use the land as the farming rights and hunting rights as long as he pays the rent on or before January 1st of each year."

Alternatively, Geier sought rescission of the sale or damages. Simon denied Geier was entitled to an injunction or any other relief.

The dispute went to trial on January 29, 2016. At the conclusion of the hearing, the district court gave the parties leave to file written arguments and took the case under advisement for a written decision. After considering everything before it, the district court found the handwriting on the back of the Sale Agreement should be construed as part of the agreement since the word "retains" was referred to in paragraph 3 of the Sale Agreement and also appeared in the handwriting on the back. The court concluded Geier "'retains' the farming and hunting rights as long as he complies with the payment terms and has the right to assign or subcontract those rights if he so desires."

At a hearing on January 30, 2017, on an objection to the journal entry and a posttrial motion, the parties told the district court they had narrowed their dispute to the question of hunting rights. The court stated the intent of its order was that Geier retained what he had before the contract and before the contract he had exclusive hunting and farming rights. Therefore, that is what he retained. Since Geier had exclusive hunting and farming rights to the land, the district court reasoned he could charge third parties to go on the land and hunt.

Simon timely appeals.

ANALYSIS

Simon presents a single claim of error. He contends the district court's interpretation of the term "retains" as it was used in the handwriting on the back of the Sale Agreement effectively added the word "exclusive" to Geier's rights, altering the agreement the parties made and unreasonably expanding Geier's hunting rights.

3

Our review of the interpretation and legal effect of written instruments is unlimited and we are not bound by a lower court's interpretation of those instruments. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014). "'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.' [Citations omitted.]" *Stechschulte v. Jennings*, 297 Kan. 2, 15, 298 P.3d 1083 (2013).

The district court's threshold decision was the finding that "the handwriting should be construed as part of the parties' agreement due to the fact that the term 'retains' is referred to in paragraph three (3) of the printed contract and in the hand written provisions on the fourth page."

Paragraph three of the Sale Agreement called for Geier to grant Simon an access easement over a specified tract, which is where the term "retains"—actually, the variant "retained"—appeared in the description as follows:

> "The *retained* 440 foot strip of the East 1120 feet of the E1/2 of the NW1/4 of
> Section 22, Township 28, Range 23, until buyer has completed a low water crossing over
> that portion of the North 440 feet not *retained* by seller." (Emphasis added).

The term does also appear in the handwriting on the back of the Sale Agreement, which the parties agree was added by Geier, in the addition that stated:

> "Lonny Geier Retains Farming and Hunting Rights As long As Rent is paid on or before
> Due date."

Although it is true that a version of the word retain is used in both places, the words are wholly disconnected in their use and context. The two unrelated appearances of the word provide no rationale to support the district court's finding that the handwritten

4

addition was intended to be a modification of the Sale Agreement. In that respect, we find the district court erred.

While that second handwritten use of the word "retains" is not part of a modification of the Sale Agreement, it is not without significance for Geier's claim of hunting rights. Immediately above Geier's handwritten addition were the Rent Agreement provisions Geier claims Simon wrote out, setting the bare terms for Geier's cash lease of the farmed part of the land he sold to Simon. Based on the clear meaning of those two parts, we find they were intended to be construed together. Unlike the unrelated word usage relied on by the district court, Geier directly tied continuation of his hunting rights to his timely payment of rent, which we find expresses the intent to include that provision as part of the Rent Agreement. Further, in his brief, Geier states he refused to sign a separate written lease when Simon later presented it on the basis he already had an agreement that included his hunting and farming rights.

There is no dispute that the Sale Agreement made no reference to hunting rights. And although the deed from Geier to Simon is not part of the record, counsel confirmed at argument that the deed reserved no hunting rights to Geier as an exception to an otherwise complete conveyance of the described real estate. All of Geier's entitlement to hunting rights, therefore, resides in the language he added to the Rent Agreement.

Geier claims that language he wrote into the Rent Agreement gave him hunting rights equal in scope to those he enjoyed while he owned the property he sold to Simon. Simon contends Geier's claim is unreasonably broad. The district court found that language gave Geier "the exclusive rights to farm and hunt the land as long as . . . the rent is paid by the first of the year," and that "[t]hese rights are exclusive and if [Geier] desires, he can assign or subcontract and charge in the event he decides to allow third parties to hunt the land."

5

In its order, the district court made no finding of ambiguity that would have allowed that court to consider any discussions, negotiations, or agreements outside the language written into the contract. We agree with the district court's implicit finding that there was no ambiguity in the Rent Agreement concerning hunting rights.

"A contract is ambiguous if it contains provisions or language of doubtful or conflicting meaning. In determining whether ambiguity exists, the language of the contract is to receive a fair, reasonable, and practical construction. *Weber v. Tillman,* 259 Kan. 457, 476, 913 P.2d 84 (1996). A reasonable construction of the contract is one that makes the contract fair, customary, and such as prudent persons would intend. 259 Kan. at 476." *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 324, 961 P.2d 1213 (1998).

In the absence of ambiguity, there is no requirement for rules of construction or parol evidence.

"The parol evidence rule was plainly stated in *Thurman v. Trim*, 206 Kan. 118, Syl. ¶ 2, 477 P.2d 579 (1970): 'When a contract is complete, unambiguous and free of uncertainty, parol evidence of a prior or contemporaneous agreement or understanding, tending to vary or substitute a new and different contract for the one evidenced by the writing is inadmissible.'" *Cude v. Tubular & Equipment Services*, 53 Kan. App. 2d 287, 291, 388 P.3d 170 (2016).

Accordingly, we need not, and should not, consider the testimony taken by the district court concerning the preliminary dealings of the parties as they arrived at their ultimate agreement. The Rent Agreement may be interpreted from its own terms.

We find nothing in the plain language of Geier's addition to the Rent Agreement to support the scope of hunting rights found by the district court. Geier and Simon did contract for Geier to retain the right to hunt on the land, but that right is personal to Geier. The Rent Agreement grants the right to hunt and farm to "Lonny Geier," conditioned on

6

timely payment of rent. Neither exclusivity, nor the right to assign or subcontract Geier's right to hunt, nor the right to transform it into a commercial operation by charging third parties to hunt is included in the document. Had Geier wanted any or all of those extended rights included, he could have written them into the agreement, subject to Simon's concurrence.

Geier asks us—based on the word "retains"—to accept an interpretation of the Rent Agreement that by inference alone gives him enjoyment of the land with respect to hunting rights that is commensurate with complete ownership when no such reservation was included in the Sale Agreement or deed. Such an expansive inference would not result in a construction of the agreement that would be "fair, customary, and such as prudent persons would intend." *Weber v. Tillman*, 259 Kan. 457, 476, 913 P.2d 84 (1996).

Geier had the full right to use the land for any and all hunting purposes *before* he sold to Simon. When he sold, he reserved none of those rights in the Sale Agreement or deed but wrote into the separate lease a provision allowing him to personally continue to hunt if the lease payments are timely made. He did not in that way take back rights equal to those he gave up in the Sale Agreement and deed.

Reversed.