NOT DESIGNATED FOR PUBLICATION

No. 117,653

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STORE SIX, LLC, d/b/a NUTS AND BOLTS,
*Appellee*,

v.

SHANNON VALLEY VENTURES, LLC,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed March 23, 2018. Affirmed.

*Timothy P. Orrick*, of Orrick & Erskine, LLP, of Overland Park, for appellant.

*Timothy J. Sear* and *Kelly D. Stohs*, of Polsinelli PC, of Overland Park, for appellee.

Before ARNOLD-BURGER, C.J., STANDRIDGE and BRUNS, JJ.

PER CURIAM: Shannon Valley Ventures, LLC (Shannon Valley) appeals from the district court's decision, following a bench trial, that it had orally agreed to modify the amount of rent to be charged to Store Six, LLC (Store Six) to resolve a dispute between the parties over a written lease agreement. On appeal, Shannon Valley contends that the district court did not have the authority to enforce an oral agreement between the parties in light of the provision in the written lease agreement stating that modifications must be in writing and signed by the parties. Furthermore, Shannon Valley asserts that the district court judge improperly conducted a factual investigation in this case. For the reasons set forth in this opinion, we affirm.

1

On January 8, 2010, Shannon Valley and Store Six entered into a written lease agreement. In the agreement, Store Six agreed to rent space in the Shannon Valley Shopping Center in Overland Park to be used for a "Nuts & Bolts" True Value Hardware Store. Among other things, the written lease agreement provided that Store Six would pay rent and other charges in the amount of $28,870.72 a month for a period of 10 years. In addition, the lease provided that Shannon Valley would not rent space in the shopping center to "a so-called 'flea market' or another operation selling used goods (except excluding antiques, estate merchandise, 'upscale merchandise' or consignment merchandise." The lease also provided that modifications of the agreement must be in writing signed by the party against who enforcement of the modification is sought.

A few weeks after executing the lease, the parties executed a First Amendment to Lease in which the parties agreed that Store Six would rent additional space in the shopping center. As a result, the amount of rent Store Six was to pay Shannon Valley was increased to $30,061.97 per month. The parties performed their respective obligations pursuant to the written lease agreement—as amended—for several years before this dispute arose.

On September 10, 2013, Shannon Valley entered into an agreement to lease space in the shopping center to City Union Mission, Inc.—a nonprofit organization serving the poor and homeless—to operate a City Thrift store. It is undisputed that City Thrift— which has several locations in metropolitan Kansas City—accepts donations of new and used items that the store, in turn, sells to the public to raise funds to support the work of the City Union Mission. Moreover, it is undisputed that leasing space in the shopping center to City Thrift was in violation of the terms of the written lease agreement between Shannon Valley and Store Six. In fact, counsel for Shannon Valley admitted in his oral argument before this court that his client had breached the written lease agreement.

In January 2014, Store Six started to withhold rent shortly after an armed robbery had occurred at City Thrift. Although the parties dispute the reason given for Store Six withholding rent, representatives of Shannon Valley and Store Six met in March of 2014 to discuss the dispute that had arisen between the parties. The meeting was attended by Brian Richards—who was the president of Store Six at the time; John Cruz—legal counsel for Store Six; Michael Christie—one of the managing members of Shannon Valley; Dan Christie—Michael's brother and one of the owners of Shannon Valley; and, John Benge—legal counsel for Shannon Valley. Both of the attorneys—Cruz and Benge—testified by way of deposition in this case and the district court admitted their depositions into evidence at the trial of this case. According to both attorneys, the parties agreed at the meeting to resolve their dispute. Specifically, the attorneys testified that City Thrift could remain as a tenant in the shopping center and that the total rent and charges to be paid by Store Six would be $16,500 a month for an indeterminate number of months. Likewise, the parties agreed that Store Six would pay $16,500 a month in back rent for each of the months that it had withheld payment to Shannon Valley.

At some point following the March meeting, the attorneys for the parties began working on a Second Amendment to the Lease to reflect the compromise agreement reached by the parties. The parties exchanged several drafts of the document. Although there were various differences in the proposed language, the two primary terms were the same in each draft—(1) Store Six waived "all prohibitions against the operation of a thrift store" in the shopping center, and (2) Shannon Valley agreed that Store Six "shall pay . . . $16,500 per month (the 'Monthly Gross Rent') . . . [to] apply retroactively to January 1, 2014." In May 2014, Store Six signed and Shannon Valley received the Second Amendment to the Lease; however, Shannon Valley never signed the document.

In reliance on the agreement reached by the parties at the March meeting, Store Six presented Shannon Valley with a check during the first week of April 2014, to cover rent for January, February, March, and April 2014 in the amount of $16,500 for each

3

month. Shannon Valley accepted the check without objection. Moreover, Shannon Valley began sending written invoices to Store Six showing a "Monthly Gross Rent" of $16,500 and reflecting that there was no outstanding balance from the previous month. For the next 22 months, from May 2014 to February 2016, Store Six paid—and Shannon Valley accepted without objection—rent in the amount of $16,500 each month. Furthermore, throughout this period, City Thrift was allowed to continue to sell used goods from its store in the shopping center.

On December 8, 2014, Richards ceased his service as the president of Store Six. He was replaced by Scott Westlake, chairman of Store Six, and Timothy Hake, president of Store Six. In his deposition testimony that the district court admitted into evidence at the trial of this case, Michael Christie testified that Richards blamed him for financial problems Store Six experienced at the time. He further testified that Westlake fired Richards, which led to a "big lawsuit over everything" between Westlake and Richards. With Richards out of the picture, Michael Christie informed Westlake and Hake in April 2015 that he never signed the Second Amendment to Lease and he demanded more rent from Store Six. After Westlake and Hake informed Christie about the financial condition of the Nuts and Bolt store located at the Shannon Valley Shopping Center, he agreed—in his position as a managing member of Shannon Valley—to continue to accept rent in the amount of $16,500 a month. Evidently, a similar conversation occurred in the fall of 2015, and Shannon Valley continued to invoice Store Six for "Monthly Gross Rent" in the amount of $16,500.

On April 1, 2016, Shannon Valley began invoicing Store Six for "Monthly Gross Rent" in the amount of $30,061.97. In response, Store Six disputed the right of Shannon Valley to increase the amount of rent that it had been paying since January of 2014, and paid the rent "under protest" in an attempt to preserve its legal rights. On May 5, 2016, Store Six filed a verified petition seeking declaratory judgment, specific performance,

injunctive relief, and damages. Shannon Valley filed an answer on May 27, 2016, in which it denied the allegations set forth in the verified petition.

The district court held a one-day bench trial on April 14, 2017. Prior to trial, the parties had deposed Dan Christie, Michael Christie, Scott Westlake, John Cruz, and John Benge. At trial, the district court admitted the transcripts of these depositions into evidence. In addition, the district court admitted 39 other exhibits into evidence at trial. Moreover, three witnesses—Richards, Hake, and Michael Christie—testified in person during the course of the trial. At the conclusion of evidence and the presentation of closing arguments, the district court took the case under advisement. Following a recess of approximately 20 minutes, the district court announced its opinion from the bench.

Based on hearing the testimony presented, reviewing the exhibits admitted into evidence, and hearing the arguments of counsel, the district court determined that a dispute had arisen between the parties in light of Shannon Valley leasing space in the shopping center to a thrift store. In addition, the district court found that the parties had resolved this dispute by lowering the amount of rent to be paid by Store Six to $16,500 a month in exchange for allowing the thrift store to remain a tenant in the shopping center. Moreover, the district court found that Shannon Valley sent a Second Amendment to Lease to Store Six reflecting the agreement reached by the parties, that Store Six signed the agreement, and that it was returned to Shannon Valley. Likewise, the district court noted that Shannon Valley began invoicing and accepting payment from Store Six for the lower amount for 27 months. Thus, the district court concluded that "there was an agreement on a modification . . . based on the . . . breach under paragraph 8(g) in the original contract" and that the terms of the agreement are reflected in the Second Amendment to Lease.

ANALYSIS

*Issues Presented*

On appeal, Shannon Valley presents two issues. First, whether the district court erred in failing to enforce the modification or amendment provision of the original lease agreement entered into by the parties. Second, whether the district court improperly conducted a factual investigation in reaching its findings of fact. In response, Store Six contends that Kansas law allows oral modifications to written contracts and that there is substantial evidence in the record to support the district court's conclusion that the parties to the lease agreement had agreed to an oral modification. Store Six also contends that the district court did not conduct a factual investigation.

*Standard of Review*

This appeal involves mixed questions of fact and law. As such, we apply a bifurcated standard of review. We exercise unlimited review over the interpretation and legal effect of written instruments. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014). However, to the extent that the district court's findings of fact are disputed, we apply a substantial competent evidence standard of review. *Schoenholz v. Hinzman*, 295 Kan. 786, 792, 289 P.3d 1155 (2012). Evidence is substantial if a reasonable person might accept it as sufficient to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014). In determining whether substantial competent evidence supports district court findings, we are to disregard conflicting evidence or other inferences that might be drawn from the evidence. *Unruh v. Purina Mills*, 289 Kan. 1185, 1196, 221 P.3d 1130 (2009).

*Oral Modification of Lease Agreement*

It is undisputed that the original lease agreement entered into by the parties contained the following provision:

> "The terms, covenants and conditions hereof may not be changed orally, but only by an instrument in writing signed by the party against whom enforcement of the change, modification or discharge is sought, or by such party's agent. The failure of either party hereto to insist in any one or more cases upon the strict performance of any term, covenant or condition of this Lease to be performed or observed by the other party hereto shall not constitute a waiver or relinquishment for the future of any such term, covenant or condition."

Nevertheless, there are times in which Kansas law permits parties to a written agreement to enter into subsequent oral agreements to modify the written contract. *Cude v. Tubular & Equipment Services*, 53 Kan. App. 2d 287, 294, 388 P.3d 170 (2016) (citing *Coonrod & Walz Const. Co., Inc. v. Motel Enterprises, Inc.*, 217 Kan. 63, 73, 535 P.2d 971 [1975]). "This is true even where the parties' written agreement provides that later changes must be made in writing, particularly where the parties disregarded that requirement throughout the performance of the agreement." *Douglas Landscape & Design v. Miles*, 51 Kan. App. 2d 779, 789, 355 P.3d 700 (2015) (citing *Owens v. City of Bartlett*, 215 Kan. 840, 845, 528 P.2d 1235 [1974]; *Bailey v. Norton*, 178 Kan. 104, 109-10, 283 P.2d 400 [1955]). Ultimately, "whether any particular term of a written contract has been modified or waived by a subsequent agreement is a question of fact for the trial court." *Thoroughbred Associates v. Kansas City Royalty Co.*, 297 Kan. 1193, 1209, 308 P.3d 1238 (2013) (citing *Coonrod*, 217 Kan. 63, Syl. ¶ 2); see *Belger Cartage Serv., Inc. v. Holland Constr. Co.*, 224 Kan. 320, 330, 582 P.2d 1111 (1978); *Saddlewood Downs v. Holland Corp., Inc.*, 33 Kan. App. 2d 185, 194, 99 P.3d 640 (2004).

Here, the district court considered the evidence presented at trial and concluded that Shannon Valley and Store Six did in fact subsequently agree to modify the terms of their written agreement. It does not appear that Shannon Valley is arguing that there is not substantial evidence in the record to support the district court's conclusion. An issue not briefed by the appellant is deemed waived or abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). Regardless, even if Shannon Valley had preserved this issue for appeal, we find the evidence in the record on appeal to be more than sufficient to support the conclusion reached by the district court.

Shannon Valley candidly admits that renting space in the shopping center to a thrift store was a violation of the terms of its lease agreement with Store Six. Moreover, there is evidence in the record of an armed robbery at the thrift store that led to security concerns. Afterward, Store Six began withholding rent payments and the parties held a meeting—with their legal counsel present—in an attempt to resolve their dispute. Although there was conflicting evidence presented at trial regarding what occurred at the meeting, we find that there is sufficient evidence in the record upon which a reasonable person could conclude that the parties agreed to resolve their dispute by Shannon Valley reducing the amount of the rent to $16,500 a month in exchange for Store Six waiving its right to object to the presence of a thrift store in the shopping center.

We also find that there is substantial evidence in the record upon which a reasonable person could find that the pattern of conduct between the parties following the meeting supported the conclusion that there was a meeting of the minds as to the material terms of the agreement to modify the written lease agreement. Although the parties exchanged drafts of a document entitled Second Amendment to Lease containing minor differences in the language, the material terms remained the same in each draft—(1) that Store Six waived all prohibitions against the operation of a thrift store in the shopping center and (2) that Shannon Valley reduced the amount of monthly rent to be paid by Store Six to $16,500 per month retroactively to January 1, 2014.

Even though Store Six signed the Second Amendment to Lease and a signed copy was received by Shannon Valley, it appears that Shannon Valley never signed the document. Nevertheless, Shannon Valley accepted—without objection—the payment of $16,500 a month from Store Six for the months of January, February, March, and April 2014. Furthermore, a review of the record reflects that Shannon Valley began invoicing Store Six for "Monthly Gross Rent" in the amount of $16,500 and accepted monthly payments in the amount—also without objection—through February 2016. We note that not only was the $16,500 accepted but also that the invoices sent the following month did not show an outstanding balance due from the prior month. Furthermore, throughout this period of time, City Thrift was allowed to continue to sell used goods from its store in the shopping center.

It is important to note that Kansas law favors out-of-court settlement of disputes. See *Tilzer v. Davis, Bethune & Jones*, 288 Kan. 477, 496, 204 P.3d 617 (2009); *Bright v. LSI Corp.*, 254 Kan. 853, 860, 869 P.2d 686 (1994); *Kennedy v. City of Sawyer*, 228 Kan. 439, 461, 618 P.2d 788 (1980); *James Colborn Revocable Trust v. Hummon Corp.*, 55 Kan. App. 2d 120, 128, 408 P.3d 987 (2017). Here, we find substantial evidence in the record on appeal to support a conclusion that the parties had a contractual dispute and that they mutually agreed to settle that dispute in March 2014. Moreover, we find substantial evidence in the record to support the district court's conclusion that the parties intended to modify their written lease agreement by a subsequent oral agreement and that the material terms of the agreement reached by the parties are those set forth in the Second Amendment to Lease. Thus, we will not replace our judgment for that of the district court on this issue.

*Alleged Factual Investigation*

Shannon Valley also contends that the district court acted improperly in noting on the record that "Richards was the president of [Store Six] from November the 19th, 2007,

9

until December 8th, 2014" and that "[it] does appear that there was a falling out between he and his former employer." Specifically, Shannon Valley argues that it was inappropriate for the district court to have "reviewed the court files and does note that there is 16CV4928, which is a lawsuit between Mr. Richards and his employer." According to Shannon Valley, "[t]he only conclusion that can be drawn from this exercise is the Court had doubts about the veracity of some or all of Mr. Richards' testimony, and prior to making its findings of fact undertook its own research . . . ."

On appeal, we have unlimited review over allegations of judicial misconduct. *State v. Cheever*, 304 Kan. 866, 896, 375 P.3d 979 (2016). Moreover, the party alleging judicial misconduct bears the burden of establishing the misconduct occurred and that the misconduct prejudiced the party's substantial rights. *State v. Hudgins*, 301 Kan. 629, 637-38, 346 P.3d 1062 (2015). If a proper and reasonable construction will render the conduct unobjectionable, it is not prejudicial. *Hudgins*, 301 Kan. at 638.

Shannon Valley attempts to analogize this situation with that of a juror bringing outside information to a jury deliberation room. However, there is no allegation that the district court reviewed the allegations in Richards' lawsuit against his former employer. Hence, as in *Hudgins*, the district court's actions could be construed as nothing more than a taking of judicial notice of a public record of a pending judicial proceeding. Although perhaps it would have been better had the district court resisted the temptation to look up the pending action, we do not find such an act to rise to the level of judicial misconduct under the circumstances presented in this case.

A review of the record reveals that there were inconsistencies between Richards' testimony and that of others who were present at the March 2014 meeting between the parties. In fact, it appears that everyone who was present at the meeting—except Richards—recalled the alleged "prohibited use" of Shannon Valley leasing space to a thrift store was discussed at the meeting. Thus, there is substantial evidence in the record

10

upon which a reasonable person could have questioned Richards' credibility regardless of whether he had filed a lawsuit against his former employer—Store Six.

Furthermore, we conclude that Shannon Valley has shown no prejudice in light of the fact that there is evidence in the record in this case—specifically in the way of deposition testimony that was entered into evidence at trial—regarding the existence of a lawsuit between Richards and Store Six. See *State v. Anderson*, 243 Kan. 677, 679, 763 P.2d 597 (1988). There is also evidence in the record regarding the relationship between Richards and his former employer that allegedly led to his termination. In fact, Richards himself testified that the separation between he and his former employer was not amicable. Thus, we conclude that Shannon Valley has failed to demonstrate how the district court's opinion on Richards' credibility, in the face of numerous exhibits and deposition testimony contrary to his position, prejudiced its rights.

Affirmed.